UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALAN HOROWITCH,

                Plaintiff,

-vs-                                  Case No.  6:06-CV-1703-Orl-19KRS

DIAMOND AIRCRAFT INDUSTRIES, INC.,

                Defendant.
_____

## ORDER

This case comes before the Court on the following:

1.      Dispositive Motion For Partial Summary Judgment And Memorandum Of Law In Support Thereof of Plaintiff Alan Horowitch (Doc. No. 91, filed July 5, 2007);

2.      Motion For Summary Judgment And Memorandum Of Law In Support of Defendant Diamond Aircraft Industries, Inc. (Doc. No. 93, filed July 5, 2007);

3.      Response To Plaintiff's Summary Judgment Motion of Defendant Diamond Aircraft Industries, Inc. (Doc. No. 98, filed Aug. 6, 2007);

4.      Response to Diamond Aircraft Industries, Inc.'s Motion For Summary Judgment And Memorandum Of Law In Support of Plaintiff Alan Horowitch (Doc. No. 100, filed Aug. 17, 2007).

**Background**

This case comes before the Court on cross motions for summary judgment.  Plaintiff Alan Horowitch seeks summary judgment in his favor on Counts I and II of his Second Amended Complaint (Doc. No. 91 at p. 1, filed July 5, 2007), and Defendant Diamond Aircraft Industries, Inc. seeks summary judgment in its favor on all four counts of the Complaint (Doc. No. 93 at p. 1, filed

July 5, 2007).  Both parties have filed respective oppositions to these motions for summary judgment.  (Doc. No. 98, filed Aug. 6, 2007; Doc. No. 100, filed Aug. 17, 2007.)

## I.      Pleadings

According to Plaintiff, this case arose out of an agreement for Defendant to sell Plaintiff an aircraft.  (*See* Doc. No. 58 at pp. 4-6, ¶¶ 21-29,[1] filed May 25, 2007.)  Plaintiff alleges: anticipatory repudiation of an aircraft sales contract and demands specific performance (Count I); or, in the alternative, breach of contract (Count II); breach of the implied covenants of good faith and fair dealing (Count III); and deceptive trade practices (Count IV).  (*Id.* at pp. 7-13, ¶¶ 37-71.)

Defendant denies all four of Plaintiff's claims.  (Doc. No. 45[2] at pp. 8-14, ¶¶ 30-71, filed Apr. 2, 2007.)  Further, Defendant asserts the following affirmative defenses: (1) Plaintiff fails to state a claim upon which relief can be granted under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) Plaintiff has contractually waived and released his claims against Diamond Aircraft, except for the return of his deposit in the amount of $20,000; and (3) Plaintiff agreed in the contract that Diamond Aircraft could change the price and specifications without notice.  (*Id.* at pp. 14-15, ¶¶ 1-3.)

---

[1]     Page 1 of the Complaint has two paragraphs labeled "2."  (*See* Doc. No. 58 at p. 1.) This Court will refer to the paragraphs in terms of their actual count instead of their labeled numeral.  Therefore, the paragraph referred to as "3" is the third actual paragraph of the Complaint, though it is numbered in the Complaint as the second number "2" paragraph, etc.

[2]     Though the Answer to the Complaint (Doc. No. 45) is a document numerically preceding the Second Amended Complaint (Doc. 58), this does not affect the applicability of the responses in the Answer to the allegations of the Second Amended Complaint.  The Second Amended Complaint was merely refiled to conform to Local Rule 4.01 and is, in substance, the same as the First Amended Complaint.  (*Compare* Doc. No. 41, filed March 15, 2007 *with* Doc. No. 58.)

## II.    Material Facts as to Which There Is No Genuine Dispute

Defendant issued a press release in January of 2003, advertising its plans to build a single engine light aircraft known as the D-Jet.  (Doc. No. 93 at p. 2; Doc. No. 100-2 at pp. 2-3, ¶ 2.)  A copy of this press release was identified by Peter Maurer, President of Diamond Aircraft.  (Doc. No. 102-2 at p. 11; Doc. No. 102-3 at pp. 140-41; Doc. No. 102-11 at p. 22.)  Defendant issued several other press releases in 2003, (Doc. No. 102-4 at pp. 151-54; Doc. No. 102-11 at pp. 24-25, 27), and included information about the D-Jet on its website (Doc. No. 102-3 at pp. 149-50; Doc. No. 102-11 at p. 23).  Defendant projected the D-Jet's first flight in 2004 and initial deliveries to customers in 2006.  (Doc. No. 93 at pp. 2-3; Doc. No. 100-2 at p. 3, ¶ 3.)  Defendant's  projected price target at this time for the D-Jet was under one million dollars.  (Doc. No. 92-19 at p. 4.)

On March 17, 2003, Plaintiff signed a two-page document entitled "Aircraft and Accessories Price List and Order Form," attached to Plaintiff's Second Amended Complaint as Exhibit "A." (Doc. No. 93 at p. 3; Doc. No. 100-2 at p. 3, ¶ 4.)  On March 17, 2003, Plaintiff faxed this agreement and a letter to Defendant.  (Doc. No. 93 at pp. 3-4; Doc. No. 100-2 at p. 6, ¶ 14; Doc. No. 101-2 at pp. 47-48; Doc. No. 101-7 at p. 4.)  At the time that Plaintiff signed the contract, the D-Jet was still in the process of being developed by Defendant.  (Doc. No. 93 at p. 3; Doc. No. 100-2 at p. 4, ¶ 6.)

Pursuant to the contract, Plaintiff paid to Defendant a deposit of $20,000.  (Doc. No. 93 at p. 3, Doc. No. 100-2 at p. 5, ¶ 13.)  After receiving this deposit, Defendant assigned Plaintiff the fourth North American delivery position for the D-Jet.  (Doc. No. 93 at p. 4; Doc. No. 100-2 at p. 6, ¶ 16.)  Defendant signed and returned the contract to Plaintiff in June 2004.  (Doc. No. 93 at p. 4; Doc. No. 100-2 at p. 7, ¶ 17.)  Defendant also sent Plaintiff a confirmation letter on June 14, 2004. (Doc. No. 58 at p. 5, ¶ 27; Doc. No. 45 at p. 7, ¶ 27; Doc. No. 58-3 at p. 2.)

From mid-2003 to mid-2005, Defendant's European affiliate worked to develop the D-Jet from its original concept, selecting an engine and avionics system for the D-Jet.  (Doc. No. 93 at p. 4; Doc. No. 100-2 at p. 7, ¶ 18.)  On January 14, 2005, Jeff Owen, formerly an Executive Vice-President and Sales Manager at Diamond Aircraft, (Doc. No. 102-19 at pp. 13-15), sent an internal information bulletin to Defendant's distribution centers.  (Doc. No. 102-3 at pp. 125-26; Doc. No. 102-20 at pp. 84-85; Doc. No. 102-11 at p. 20.)  This memorandum indicated that the D-JET pricing was "currently undergoing review" and stated that "[i]n the interim, and from this date, Diamond will only accept orders for DA42 and D-JET delivery positions conditional on the new price being applicable to the order."  (Doc. No. 102-11 at p. 20.)  Then on March 31, 2006, Defendant sent another internal information bulletin to its distribution centers.  (Doc. No. 102-3 at pp. 136-37; Doc. No. 102-21 at pp. 112-13; Doc. No. 102-11 at p. 21.)  This bulletin stated, "Effective immediately, Diamond will no longer accept D-Jet order position reservations on the currently published forms." (Doc. No. 102-11 at p. 21.)  The bulletin continued to say that new order documentation would be revised and published soon and that Diamond would maintain a log of customers wishing to place an order for the D-Jet.  (*Id.*)

After finalizing the specific options to be included in the D-Jet, Defendant announced a price of $1.38 million in July 2006.  (Doc. No. 93 at p. 5; Doc. No. 100-2 at pp. 9-10, ¶ 25.)  On August 31, 2006, Defendant sent to Plaintiff and its other deposit holders a letter outlining the pricing and changes to the aircraft. (Doc. No. 93 at p. 5; Doc. No. 100-2 at p. 10, ¶ 26; Doc. No. 58-4 at pp. 2-6.) In this letter, Defendant explained that Plaintiff could maintain his delivery position for a D-Jet priced at $1.38 million by signing the accompanying documentation or recover his deposit of $20,000 and relinquish his delivery position.  (Doc. No. 93 at p. 5; Doc. No. 100-2 at p. 10, ¶ 27;

Doc. No. 102-13 at pp. 6-28.)  Plaintiff declined to enter into this agreement.  (Doc. No. 93 at p. 5; Doc. No. 100-2 at p. 10, ¶ 28.)  Instead, Plaintiff brought suit against Defendant, alleging breach of contract and deceptive trade practices.  (Doc. No. 93 at p. 5; Doc. No. 100-2 at pp. 10-11, ¶¶ 29-30.)

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is only appropriate when "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The moving party has the burden of proving that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment.  *Id.*

**Analysis**

Both Plaintiff and Defendant have moved for summary judgment on the breach of contract issue,[3] and Defendant has moved for summary judgment also on the issues of breach of the implied covenants of good faith and fair dealing, appropriate remedies, and deceptive trade practices.  (*See* Doc. No. 91 at p. 1; Doc. No. 93 at p. 1.)

**I.      Breach of Contract**

**A.      Applicable Law**

Jurisdiction in this case is premised on diversity citizenship.  (Doc. No. 58 at p. 1, ¶ 2; Doc. No. 45 at p. 2, ¶ 2.)  The Court must therefore apply state substantive law to Plaintiff's breach of contract claim.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Because the parties have agreed that Florida law governs the instant dispute, the Court applies Florida law to interpret the contract without conducting its own choice of law analysis.  (*See* Doc. No. 58-2 at p. 3, ¶ 12; Doc. No. 91 at p. 14 & n. 6; Doc. No. 93 at p. 6 (citing Florida law)); *see also Roger Kennedy Constr., Inc. v. Amerisure Ins. Co.*, No. 6:06-cv-1075, 2007 WL 2446973, at *1 n. 1 (M.D. Fla. Aug. 23, 2007).

Florida has adopted the Uniform Commercial Code ("U.C.C.") which applies to contracts for the sale of goods.  §§ 672.101-672.724, Fla. Stat. (2007).  Under Florida law, "It is elementary that in order to recover on a claim for breach of contract the burden is upon the claimant to prove

---

[3]      Footnote 1 of Plaintiff's Motion indicates that though Plaintiff moves for summary judgment on Count I of the Complaint for specific performance, Plaintiff is not seeking summary judgment on the availability of specific performance.  (*See* Doc. No. 91 at p. 1, n. 1.)  Instead, Plaintiff is merely seeking resolution of the breach of contract issue, reserving the question of whether specific performance or damages are appropriate for trial.  (*See id.*)

by a preponderance of the evidence the existence of a contract, a breach thereof and damages flowing from the breach." *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977).

### B.     Terms of the Contract

Where the terms of the contract are clear, unambiguous, and susceptible to only one interpretation, the legal effect of the contractual language is a question of law that may be resolved summarily. *E.g.*, *Gray v. D & J Indus. Inc.*, 875 So. 2d 683, 683 (Fla. 3d DCA 2004); *Angell v. Don Jones Ins. Agency, Inc.*, 620 So. 2d 1012, 1014 (Fla. 2d DCA 1993).  If the terms of the contract are ambiguous, a court may attempt to resolve the ambiguity through various rules of construction.  *See, e.g.*, *Langford v. Paravant, Inc.*, 912 So. 2d 359, 360-61 (Fla. 5th DCA 2005).  However, "when the content of an agreement is ambiguous and the parties present different interpretations, the issue of proper interpretation becomes one of fact, precluding summary judgment." *Id.* (citing *Ieracitano v. Shaw*, 815 So. 2d 787 (Fla. 4th DCA 2002)); *see also Wagner v. Wagner*, 885 So.2d 488, 492 (Fla. 1st DCA 2004) ("when an ambiguity exists and the parties' intent can be resolved only by resort to conflicting extrinsic evidence, a question of fact is presented, which must be resolved by the trier of fact").

### 1.     Terms at Issue

Both parties agree that they entered into a contract and that the Aircraft and Accessories Price List and Order Form signed by Plaintiff on March 17, 2003 and Defendant on June 14, 2004 embodies this agreement.  (Doc. No. 58 at p. 2, ¶ 9; Doc. No. 45 at p. 3, ¶ 9; Doc. No. 58-2 at pp. 2-3.)  The parties disagree, however, on the terms of this contract. (*See, e.g.*, Doc. No. 91 at pp. 14-15; Doc. No. 98 at pp. 3-6.)

Plaintiff claims that the contract was for the purchase of an aircraft, which Defendant breached. (Doc. 91 at p. 24). Defendant responds that the contract was to reserve a delivery position and that there has been no breach. (Doc. No. 93 at p. 8.) Defendant further argues that the agreement is insufficient to constitute a contract for the purchase of an aircraft. (*Id.* at pp. 7-10.)

Plaintiff next claims that the language indicating prices are subject to change is not part of the contract and argues that the limitation of liability provisions are invalid under Florida law. (Doc. No. 91 at pp. 15-18, 24-25.) Defendant denies Plaintiff's allegations, arguing that these provisions are valid and binding on the parties. (Doc. No. 93 at pp. 10-14.) The Court must consider whether any of these disagreements are based on ambiguities in the contract.

## 2.    Contractual Language

The title of the contract is "Aircraft and Accessories Price List and Order Form." (Doc. No. 58-2 at p. 2.) The contract lists the manufacturer's suggested price in 2003 dollars as $850,000. (*Id.*) This includes "IFR avionics, including Auto pilot / HSI," a "[g]lass cockpit," and "[p]remium interior." (*Id.*) "Additional Options," "Exterior Striping," and "Interior Options" are listed as "To Be Determined." (*Id.*) At the bottom of this section is a box for the total in which is handwritten the price of $850,000. (*Id.*) In the next section, the contract includes the date of the order deposit and the North American Delivery Position. (*Id.*) Handwriting in the form's blanks indicates a deposit of $20,000 was received on March 17, 2003, and the North American Delivery Position was changed from "one" to "4." (*Id.*) Plaintiff's information is included in the buyer's section, and a signature is included on behalf of Defendant in the "Acceptance" box, dated June 14, 2004. (*Id.*)

At the very bottom of this page, the following language appears:

Price and specifications subject to change without notice. All new factory-orders are
subject to review and acceptance by Diamond Aircraft Industries Inc. All prices are

-8-

F.A.F. (fly away factory) London, Ontario Canada and are expressed in $US. Applicable taxes and delivery extra.  Issued February 19, 2003.

(*Id.*)  On the next page, the contract contains a liquidated damages provision and a limitation of remedies provision.  (*Id.* at p. 3, ¶¶ 5-6.)  The first provision states in part: "Buyer agrees that its sole remedy for any failure of Seller to perform any part of this Agreement is limited to the return of deposits as herein described."  (*Id.* ¶ 5.)  The next paragraph goes on to say: ". . . UNDER NO CIRCUMSTANCES SHALL THE SELLER'S LIABILITY UNDER OR FOR BREACH OF THE AGREEMENT EXCEED THE REFUND OF THE PURCHASE PRICE . . . ."  (*Id.* ¶ 6.)  This side has been initialed by Plaintiff.  (*Id.* at p. 3.)

### 3. Contract Construction

The title of the contract indicates that it is an "Order Form."  (*Id.* at p. 2.)  The contract includes a discussion of price, options, and the intended delivery date.  (*Id.*)  Very little text is devoted to the reservation of a delivery position.  (*See id.*)  The text regarding the delivery position appears in the middle of the document and is incidental to, rather than the subject of, the order itself. (*See id.*)  Furthermore, the second page of the contract states: "The following terms and conditions apply to the purchase and sale of the aircraft described in this Agreement . . . ."  (*Id.* at p. 3, ¶ 1.) The Court therefore finds that this form is unambiguously a contract for the sale of an aircraft and not merely a delivery position reservation agreement.

The extent to which the contract reflects an agreement as to the price of this aircraft is, however, uncertain.  While Plaintiff has written "$850,000" into the blank for "total," the form also indicates that additional options are to be determined.  (*Id.* at p. 2.)  Further, the "subject to change" language is not entirely clear as to its application.  (*See id.*)  For these reasons, the contractual terms as to price are ambiguous.

### 4.      Resolving the Ambiguity

Both parties argue that the rules of construction may be utilized to clarify the "subject to change" language.  Both sides offer extrinsic evidence to support their respective interpretations. Plaintiff asks this Court to consider Internet advertisements using similar language, the deposition testimony of Plaintiff, parol evidence, and subsequent versions of the order form.  (*See* Doc. No. 91 at pp. 14-24.)  In opposition, Defendant also points to Plaintiff's deposition testimony (*see* Doc. No. 93 at pp. 11-12), as well as the testimony of Peter Maurer and industry practices (*see* Doc. No. 93 at p. 19; Doc. No. 98 at pp. 7-9).  To resolve this ambiguity, the Court would have to consider conflicting extrinsic evidence.  This is not permissible at the summary judgment stage.  *See, e.g.*, *Hairston*, 9 F.3d at 919; *see also Wagner*, 885 So. 2d at 492.  Therefore, the Court finds that there is a genuine issue of material fact as to the interpretation of this term in the contract.

### C.      Validity of the Contract

Defendant argues that the contract is unenforceable as a purchase agreement because it lacks a meeting of the minds as to all essential terms.  (Doc. No. 93 at pp. 7-10.)  Therefore, according to Defendant,  Plaintiff can not bring a claim for breach because the contract at issue is not valid.  (*Id.*)

To prove the existence of a contract, a plaintiff must prove that the parties had a meeting of the minds as to the essential terms of the contract.  *See Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985).  An objective test is used to determine whether a contract is enforceable.  *Id.*  In other words, "The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs–not on the parties having meant the same thing but on their having said the same thing."  *Id.* (quoting *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla.

1957)).  So long as the parties have said the same thing as to the terms of the contract, the contract is enforceable.  *See id.*

Further, the lack of clear agreement on all terms of a contract will not defeat its validity.  For instance, where a price term is not specified in the contract, the U.C.C. implies a duty of good faith in fixing the price.  § 672.305(2), Fla. Stat.  In other words, an otherwise valid agreement is not defeated because it fails to specify price.  *See id.* at cmt. 1.  In addition according to the U.C.C., "Even though one or more terms are left open, a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."  *Id.* § 672.204(3).  Where terms relating to performance are left open, "[a]ny such specification must be made in good faith and within limits set by commercial reasonableness."  *Id.* § 672.311(1).

In this case, the contract describes the subject of the sale as a "Diamond Single Engine Jet Aircraft (D-JET)."  (Doc. 58-2 at p. 2.)  It further indicates that the aircraft will include "IFR avionics, including Auto pilot / HSI," a "[g]lass cockpit," and a "premium interior."  (*Id.*)  Finally, the contract states that Diamond will seek FAA IFR-certification and JAA certification.  (*Id.*)  Such detail is adequate to describe with sufficiency the subject matter of the contract.  *See* § 672.204(3), Fla. Stat.  The remaining gaps must be filled in through an exercise of good faith and commercial reasonableness under the U.C.C.  *Id.* § 672.311(1).  Thus, the contract for the sale of an aircraft does not fail for want of definiteness.

The contract at issue is an enforceable contract, and there is a genuine issue of material fact regarding the terms of the contract.  Therefore, the Court cannot resolve the issue of breach

summarily.  For these reasons, the Court must deny Plaintiff's and Defendant's motions for summary judgment on Count II of the Complaint.

## II.  Breach of Implied Covenants of Good Faith and Fair Dealing

Defendant moves for summary judgment on Count III of the Complaint which alleges breach of the implied covenants of good faith and fair dealing.  (Doc. No. 93 at p. 16; Doc. No. 58 at pp. 10-11, ¶¶ 54-60.)  Defendant bases its Motion on two grounds.  (Doc. No. 93 at p. 16.)   First, Defendant argues that these implied covenants do not give rise to an independent cause of action, because they are inapplicable unless there is a breach of the express terms of the contract.  (*Id.* at pp. 16-17.)   Secondly, even if the Court did apply these covenants to Defendant's conduct, Defendant claims it has acted in good faith and with fair dealings.  (*Id.* at pp. 17-20.)

As decided above, there is a genuine issue of material fact as to the terms of the contract. Inquiry into whether Defendant breached the implied covenants is intrinsically entwined with this issue.  *See, e.g.*, *Speedway SuperAmerica, LLC v. Tropic Enters., Inc.*, Nos. 2D05-2207, 2D05-2209, 2007 WL 1159704, at *2 (Fla. 2d DCA Apr. 20, 2007) (quoting *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)) ("[T]he implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations.").  A fact finder must first determine the terms of a contract before it can decide if the parties have acted with good faith.  *See, e.g.*, *Ament v. One Las Olas, Ltd.*, 898 So. 2d 147, 149 (Fla. 4th DCA 2005) (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998)) ("a duty of good faith must relate to the performance of an express term of the contract").  Therefore, this Court will deny Defendant's motion for summary judgment on Count III of the Complaint.

### III. Appropriate Remedies

#### A. Limitation of Remedies Provision

Defendant argues that even if the Court finds Defendant to be in breach of the agreement, the contract limits Plaintiff's remedies to a return of his deposit for $20,000. (Doc. No. 93 at pp. 12-14.) Plaintiff responds that this provision is unenforceable under Florida law. (Doc. No. 100 at pp. 10-11.)

Florida courts permit parties to contractually limit the remedies available in the event of a breach. *See, e.g.*, *Rosenberg v. Cape Coral Plumbing, Inc.*, 920 So. 2d 61, 64 (Fla. 2d DCA 2005); *Greenstein v. Greenbrook, Ltd.*, 413 So. 2d 842, 843-44 (Fla. 3d DCA 1982). For these limitation clauses to be valid, Florida courts require the clauses to be mutual, unequivocal, and reasonable. *E.g.*, *Glover Distrib. Co., Inc. v. F.T.D.K., Inc.*, 816 So. 2d 1207, 1210 (Fla. 5th DCA 2002); *Greenstein*, 413 So. 2d at 844. Courts have found limitation clauses valid in cases where a buyer breaches a sales contract and the seller retains the initial deposit as liquidated damages. *See, e.g.*, *Hot Developers, Inc. v. Willow Lake Estates, Inc.*, 950 So. 2d 537, 541-42 (Fla. 4th DCA 2007) (collecting cases); *Atlanta Jet v. Liberty Aircraft Servs., LLC*, 866 So. 2d 148, 151 (Fla. 4th DCA 2004).

However, where the seller breaches, Florida courts have been hesitant to uphold the provision to limit the buyer's remedies to a return of the initial deposit. *See, e.g.*, *Sperling v. Davie*, 41 So. 2d 318, 320 (Fla. 1949); *Port Largo Club, Inc. v. Warren*, 476 So. 2d 1330, 1333 (Fla. 3d DCA 1985); *Blue Lakes Apartments, Ltd. v. George Gowing, Inc.*, 464 So. 2d 705, 709 (Fla. 4th DCA 1985); *see also Hackett v. J.R.L. Dev., Inc.*, 566 So. 2d 601, 603 (Fla. 2d DCA 1990). As one court has found, "A return of one's own money hardly constitutes damages in any meaningful sense."

*Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 439 (Fla. 4th DCA 1985).  Courts have been unwilling to uphold the limitation, particularly where the contract limits the buyer's remedies but leaves the seller's options open.  *See, e.g.*, *id.* at 439-40.  In such cases "the seller's obligations are wholly illusory, while the buyers' are quite real." *Id.* at 439.  Thus, Florida District Courts of Appeal have not enforced provisions that limit a buyer's remedies to a return of the initial deposit when a seller breaches a sales contract.[4]  Where there is no Florida Supreme Court case directly on point, this Court is "bound by intermediate Florida appellate decisions in [a] diversity case." *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1399 (11th Cir. 1990).

In the instant dispute the seller, Defendant, drafted the contract.  (*See* Doc. 58-2.)  The second page states: "Buyer agrees that its sole remedy for any failure of Seller to perform any part of this Agreement is limited to the return of deposits as herein described." (*Id.* at p. 3, ¶ 5.)  The buyer, Plaintiff, is limited to pursuing a return of his own money as damages.  (*Id.* at p. 3, ¶¶ 5-6.)  There is no similar provision exclusively defining the Defendant's remedies.  (*See id.* at p. 3.)  Given this inequality in the remedies available to the two parties, and the inadequacy of the return of a deposit as damages, this Court must follow the holdings of the Florida courts and find such a provision invalid as unreasonable and lacking mutuality.  Therefore, Defendant's motion for

---

[4]    The Court questions the validity of this practice, especially where, as here, the contractual provision is stated clearly and in all capital letters.  (*See* Doc. No. 58-2 at p. 3, ¶¶ 5-6.)  This practice is particularly confusing where in other contexts, for instance in cases regarding contracts limiting tort liability and warranties, Florida District Courts of Appeal have upheld limitation of liability provisions regardless of the status of the culpable party.  *See, e.g.*, *Gen. Tool Indus., Inc. v. Premier Mach., Inc.*, 790 So. 2d 449 (Fla. 3d DCA 2001); *Theis v. J & J Racing Promotions*, 571 So. 2d 92 (Fla. 2d DCA 1990).

summary judgment on Count II of the Complaint to limit Plaintiff's possible remedies to the return of his deposit is denied.

### B.    Specific Performance

Defendant's next argument regarding remedies involves Count I of the Complaint which demands specific performance.  (Doc. No. 58 at pp. 7-8, ¶¶ 37-49.)  Defendant states that specific performance is not available because the specifications of the contract are uncertain, the subject matter of the contract is not unique, and there is an adequate remedy at law.  (Doc. No. 93 at pp. 14-16.)  Plaintiff argues in response that the fourth produced D-Jet is "unique and has unique intrinsic value to Dr. Horowitch and the market."  (Doc. No. 100 at p. 11.)

The U.C.C. states that specific performance is available "where the goods are unique or in other proper circumstances."  § 672.716(1), Fla. Stat.  Specific performance should only be granted when: "1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it."  *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005).  For example, a Florida court may order specific performance where the good in question is an antique.  *See, e.g.*, *Mangus v. Porter*, 276 So. 2d 250, 250 n. 1 (Fla. 3d DCA 1973).  However, this equitable remedy is "limited to those [contracts] involving a unique subject matter such as an agreement to convey land."  *George Vining & Sons, Inc. v. Jones*, 498 So. 2d 695, 697 (Fla. 5th DCA 1986).  Further, if an order granting specific performance would require the court to supervise future performance, it will be denied.  *See, e.g.*, *Mayor's Jewelers, Inc. v. Cal. Pub. Employee's Ret. Sys.*, 685 So. 2d 904, 905 (Fla. 4th DCA 1996).

Defendant has notified this Court of a case in which the Fourth Circuit Court of Appeals found that a private jet was not so unique as to warrant specific performance where there had been

a breach of a sales contract.  (Doc. No. 93 at p. 15); *see also Klein v. PepsiCo, Inc.*, 845 F.2d 76, 80

(4th Cir. 1988).  The Fourth Circuit considered this issue under Virginia law which includes the

U.C.C.  *Klein*, 845 F.2d at 80.  The Court not only found that a private jet was not a unique good,

but also held that "price increases alone are no reason to order specific performance."  *Id.*  Plaintiff

offers no legal authority to controvert this reasoning, and the Court has found no other case directly

addressing the issue.[5]  (*See* Doc. No. 100 at p. 11.)

This Court finds the reasoning of the Fourth Circuit persuasive and, following the law of the

Florida courts discussed previously, holds that specific performance is not an available remedy in

this case.  Defendant's motion for summary judgment on Count I of the Complaint therefore is

granted.

### III.      Deceptive Trade Practices

#### A.      Applicable Law

Defendant moves for summary judgment on Count IV of the Complaint regarding deceptive

trade practices.  (Doc. No. 93 at pp. 20-25.)  In their arguments, both parties raise a choice of law

question.  (*Id.* at pp. 20-21; Doc. No. 100 at p. 14 & n. 8.)  Defendant argues that Florida law cannot

apply to Plaintiff's claim under the Commerce Clause, because Plaintiff cannot prove that any

relevant conduct took place in Florida.  (Doc. No. 93 at pp. 20-21 & n. 8.)  Further,  Defendant

---

[5]       The only other case that addresses a similar issue is from Washington where a court
found that the contracted-for planes "were so rare in terms of their exceptional
condition that [the plaintiff] had no prospect to cover its anticipated re-sales by
purchasing alternative planes, because there was no possibility of finding similar or
better planes."  *King Aircraft Sales, Inc. v. Lane*, 846 P.2d 550, 553 (Wash. Ct. App.
1993).  Such is not the case here, where the evidence shows that Plaintiff is seeking
to purchase a plane for personal use and has other quality models available to him
for purchase.  (*See* Doc. No. 101-2 at pp. 18-19, 22-26.)

contends that Plaintiff cannot amend his Complaint to add a claim under Arizona's deceptive trade practices laws.  (*Id.*)  Plaintiff responds that he has adequately stated a claim to survive summary judgment under either Florida or Arizona law.  (Doc. No. 100 at pp. 14-16 & n. 8.)  This Court must first determine what law should apply to Plaintiff's deceptive trade practices claim to consider the motion for summary judgment.

In a diversity action, a district court must apply the conflict of law principles of its forum state to determine which state's substantive law should apply.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).  When dealing with claims arising in tort, the applicable law is not controlled by a contractual choice of law provision; instead, it is decided according to the law of the forum state.  *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1012 (S.D. Fla. 1992) (quoting *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992)); *see also Grupo Televisa, S.A.*, 485 F.3d at 1240.  Florida utilizes the "'most significant relationship' test to determine which state's law applies to tort claims."  *Burger King Corp.*, 805 F. Supp. at 1012; *see also Garcia v. Pub. Health Trust of Dade County*, 841 F.2d 1062, 1064-65 (11th Cir. 1988).

The Florida Supreme Court adopted the most significant relationship test as set forth in the Restatement (Second) of Conflict of Laws §§ 145-46 (1971).  *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980); *see also Grupo Televisa, S.A.*, 485 F.3d at 1240.  Under section 145 of the Restatement, factors to consider in determining which state has the most significant relationship to the cause of action include:

> (a)     the place where the injury occurred,
> (b)     the place where the conduct causing the injury occurred,
> (c)     the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d)      the place where the relationship, if any, between the parties is centered.

*Bishop*, 389 So. 2d at 1001 (quoting Restatement (Second) of Conflict of Laws § 145(2)).  The

Florida Supreme Court further clarified, "The conflicts theory set out in the Restatement does not

reject the 'place of injury' rule completely.  The state where the injury occurred would, under most

circumstances, be the decisive consideration in determining the applicable choice of law."  *Id.*

The Eleventh Circuit Court of Appeals has stated that courts should look to the comments

of the Restatement when making a Florida choice of law determination.  *See Grupo Televisa, S.A.*,

485 F.3d at 1241-43.  The comments to section 145 of the Restatement (Second) of Conflict of Laws

point to section 148 for torts involving fraud or misrepresentation.  *See* Restatement (Second)

Conflict of Laws § 145 cmt. e.  Section 148 advises courts to consider the following contacts when

the alleged tort involves fraud or misrepresentation, and the plaintiff's injury and the defendant's

conduct took place in different locales:

(a)      the place, or places, where the plaintiff acted in reliance upon the defendant's
representations,
(b)      the place where the plaintiff received the representations,
(c)      the place where the defendant made the representations,
(d)      the domicil, residence, nationality, place of incorporation and place of
business of the parties,
(e)      the place where a tangible thing which is the subject of the transaction
between the parties was situated at the time, and
(f)      the place where the plaintiff is to render performance under a contract which
he has been induced to enter by the false representations of the defendant.

*Id.* § 148(2).

Here, even though the contract indicates that Florida law should govern any dispute, (Doc.

No. 58-2 at p. 3, ¶ 12), Plaintiff's deceptive trade practices claim sounds in tort.  *See, e.g.*, *Am.*

*Boxing & Athletic Ass'n v. Young*, 911 So. 2d 862, 865 (Fla. 2d DCA 2005) ("a tort claim under

FDUTPA"); *Crowley Liner Servs., Inc. v. Transtainer Corp.*, No. 06-21995, 2007 WL 433352, at

*5 (S.D. Fla. Feb. 6, 2007) ("The defendant's FDUTPA counterclaim sounds in tort.").  Therefore, Florida's conflict of laws rule applies, and the Court must determine what state has the most significant relationship to Plaintiff's tort claim.

It is undisputed in this case that Plaintiff is an Arizona resident, and Defendant is incorporated in Canada.  (Doc. No. 58 at p. 1, ¶¶ 3-4; Doc. No. 45 at p. 2, ¶¶ 3-4.)  When Plaintiff contacted Defendant, he telephoned its office in Canada from Arizona.  (Doc. No. 101-2 at pp. 31-32.)  The contract at issue was faxed from Plaintiff's home in Arizona.  (*See* Doc. No. 102-11 at p. 16.)  There appears to be no dispute that virtually all contact between the parties took place while Plaintiff was in Arizona and Defendant in Canada.  (*See, e.g.*, Doc. No. 101-2 at pp. 31-32; Doc. No. 102-11 at p. 30; Doc. No. 102-13 at pp. 6-10.)[6]

The Court must apply these facts to the contacts listed in Section 148 of the Restatement.  Regarding contact (a), the evidence shows that the place where Plaintiff acted in reliance on Defendant's alleged misrepresentations is Arizona.  (*See* Doc. No. 101-2 at pp. 31-32; Doc. No. 102-11 at pp. 16, 30; Doc. No. 102-13 at pp. 6-10.)  With respect to contact (b), the evidence demonstrates that the place where Plaintiff received Defendant's alleged misrepresentations is also Arizona.  (*See* Doc. No. 101-2 at pp. 31-32; Doc. No. 102-11 at pp. 16, 30; Doc. No. 102-13 at pp. 6-10.)  Moving on to contact (c), the evidence suggests that Defendant did not make these alleged misrepresentations in any one place; rather, Defendant issued press releases across the country and maintained a global website.  (*See* Doc. No. 102-3 at pp. 149-50; Doc. No. 102-4 at pp. 151-54.)  In regards to contact (d), both parties agree that Plaintiff resides in Arizona, and Defendant is

---

[6]     From the record, it appears that the only event that took place in Florida was the "AOPA expo" in Palm Springs in 2006.  (Doc. No. 101-2 at pp. 30-31.)  This of course took place after the advertisements and contract in question.

incorporated in, and does business out of, London, Ontario, Canada.  (*See* Doc. No. 58 at p. 1, ¶¶ 3-4; Doc. No. 45 at p. 2, ¶¶ 3-4.)  There is no"place where a tangible thing which is the subject of the transaction between the parties was situated at the time" under contact (e) because, according to the allegations of the parties, the plane was not yet built at the time Plaintiff received the advertisements and contracted with Defendant.  (*See* Doc. No. 93 at p. 3; Doc. No. 100-2 at p. 4, ¶ 6.)  Finally, regarding contact (d), the place where performance was due was not yet specified: in the contract, price was listed as "F.A.F. (fly away factory) London, Ontario, Canada" and delivery was "extra."  (Doc. No. 58-2 at p. 2.)

Of the six contacts listed in section 148, only three are readily ascertainable: (a), (b), and (d).  The evidence shows that the contacts listed in (a) and (b) took place in Arizona, and the contacts listed in (c) are located in Arizona and Canada.  Therefore, Arizona has three contacts and Canada has only one.  Under the Restatement test, Arizona appears to be the state with the most significant relationship to Plaintiff's tort claim.  Significantly, both parties appear to agree that Arizona law is appropriate.  (*See* Doc. No. 93 at p. 20 n. 8; Doc. No. 100 at p. 14 n. 8.)

Thus, the Court finds that the state with the most significant relationship to the Plaintiff's claim is Arizona.  Accordingly, Arizona tort substantive law applies to Plaintiff's deceptive trade practices claim.[7]

---

[7]     Defendant argues that Plaintiff should not be permitted to assert a claim under Arizona law because the time for amending the Complaint to add a claim has passed. (Doc. No. 93 at p. 20 n. 8.)  However, this Court has previously held that Plaintiff's general allegations "give rise to claims under the laws of a number of States, only one of which is Florida." (Order, Doc. No. 57 at p. 3, n. 3.)  Plaintiff's pleadings are sufficient to give notice to Defendant of Plaintiff's claim, and therefore this Court rejects any arguments against Count IV involving insufficient pleadings.

### B.      Arizona's Consumer Fraud Act

Arizona has enacted the Consumer Fraud Act to prohibit deceptive trade practices.  *See* Ariz.

Rev. Stat. Ann. § 44-1522(A) (2007).  The relevant section states:

> The act, use or employment by any person of any deception, deceptive act or
> practice, fraud, false pretense, false promise, misrepresentation, or concealment,
> suppression or omission of any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale or advertisement
> of any merchandise whether or not any person has in fact been misled, deceived or
> damaged thereby, is declared to be an unlawful practice.

*Id.*  This Act creates a private right of action.  *See Sellinger v. Freeway Mobile Home Sales, Inc.*,

521 P.2d 1119, 1122 (Ariz. 1974).

To establish a claim under the statute, "a plaintiff must show a false promise or

misrepresentation made in connection with the sale or advertisement of merchandise and consequent

and proximate injury resulting from the promise.  An injury occurs when a consumer relies, even

unreasonably, on false or misrepresented information."  *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz.

Ct. App. 2004) (citations omitted).  The only showing of intent required is "an intent to do the act

involved."  *State ex rel. Babbit v. Goodyear Tire & Rubber Co.*, 626 P.2d 1115, 1118 (Ariz. Ct. App.

1981); *see also* 9A *Ariz. Prac., Business Law Deskbook* § 20:11 (2006-2007).  "It is not necessary

to show a specific intent to deceive."  *State ex rel. Babbit*, 626 P.2d at 1118.[8]  Finally, to show a

proximate injury, a plaintiff must prove that he relied on the unlawful acts and was damaged.  *Peery*

*v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978); *see also Kuehn*, 91 P.3d at 351.

---

[8]           The *Babbit* Court clarified that there is a separate clause in the middle of this section
of the statute regarding intent in limited circumstances.  *Babbit*, 626 P.2d at 1118 n.
1.  The language "or concealment, suppression or omission of any material fact with
intent that others rely upon such concealment, suppression or omission," is self-
containing and not applicable to the earlier list.  *Id.*

Plaintiff proffers evidence of Diamond's alleged misrepresentation in the form of Defendant's advertisement dated January 14, 2003, which stated that the D-Jet's "[p]rojected price will be well under US $ 1 Million." (Doc. No. 102-11 at p. 22.)  Plaintiff has also produced evidence of reliance and proximate injury.   In his deposition, Plaintiff testified that, because of the projected price estimate, he submitted an order form to Defendant.  (Doc. No. 101-2 at p. 27.)  He has offered evidence showing that this order form constituted a contract with Defendant for the purchase of a D-Jet for $850,000.  *See* Section I, *supra*.  He has shown that he gave a deposit of $20,000 to Defendant but has not received any aircraft.  (Doc. No. 45 at p. 6, ¶ 24; *id.* at p. 8, ¶ 33.)  Instead, Defendant has written to Plaintiff advertising that the price of the D-Jet is now set at $1.38 million. (Doc. No. 58-4 at p. 3.)  This raises genuine issues of fact as to liability and damages.  Accordingly, the Court will deny Defendant's motion for summary judgment on Count IV of the Complaint.

## Conclusion

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Complaint.  (Doc. No. 91.)  The Court **GRANTS** Defendant's Motion for Summary Judgment on Count I and **DENIES** Defendant's Motion for Summary Judgment on Counts II, III, and IV.  (Doc. No. 93.)

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 15, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record